122 T.C. No. 23

UNITED STATES TAX COURT

MARTY J. MEEHAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 219-02L.                    Filed June 14, 2004.

Before the effective date of sec. 6330, I.R.C., R
served a continuing wage levy on P's employer. After
the effective date of sec. 6330, I.R.C., R levied P's
severance pay pursuant to the continuing wage levy.

<u>Held</u>: P's severance pay constitutes "salary or
wages" within the meaning of sec. 6331(e), I.R.C.
Because the continuing wage levy was initiated before
the effective date of sec. 6330, I.R.C., this Court
lacks jurisdiction to review R's levy of P's severance
pay.

<u>Daniel J. Arno</u>, for petitioner.

<u>Anne D. Melzer</u>, for respondent.

OPINION

THORNTON, <u>Judge</u>:  Pursuant to sections 6320(c) and 6330(d), petitioner filed a petition for review of an Appeals Office determination sustaining a notice of Federal tax lien filing.[1] The primary issue is whether petitioner is entitled to a section 6330 Appeals Office hearing with respect to his challenge of a levy of his severance pay that occurred after the effective date of section 6330 pursuant to a continuing wage levy that was served on petitioner's employer before the effective date of section 6330.

## Background

The parties submitted this case fully stipulated pursuant to Rule 122.  When petitioner filed his petition, he resided in Oswego, New York.

## Petitioner's 1988-94 Tax Liabilities

Petitioner failed to pay Federal income taxes that he owed for taxable years 1988, 1989, 1990, 1991, 1992, 1993, and 1994. Respondent filed various Notices of Federal Tax Lien with respect to these unpaid taxes.[2]  On or about October 21, 1997, respondent

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] In 1991, respondent filed a Notice of Federal Tax Lien for petitioner's 1988 and 1989 income tax liabilities.  In 1994, respondent filed a second Notice of Federal Tax Lien for petitioner's 1990, 1991, 1992, and 1993 income tax liabilities.

(continued...)

served a continuing wage levy (the continuing wage levy) on petitioner's employer, the City of Oswego. Pursuant to the continuing wage levy, petitioner's employer regularly remitted payments to respondent. These remittances were applied against petitioner's 1988, 1989, 1991, 1992, and 1993 income tax liabilities. At all times, petitioner was aware of the continuing wage levy.

In December 2000, shortly before laying petitioner off, his employer offered him $17,116 of severance pay, based on his years of service, current wages, merit, and a waiver of any discrimination claim that he might have had against his employer. Pursuant to the continuing wage levy, petitioner's employer remitted $10,068 of the severance pay to respondent.[3] His employer then applied $3,048 to petitioner's current payroll withholdings and paid petitioner the $4,000 balance.[4]

---

[2](...continued)
In 1995, respondent filed a third Notice of Federal Tax Lien for petitioner's 1994 income tax liability.

[3] As far as the record reveals, it would appear that this amount was applied to petitioner's 1988, 1989, 1991, 1992, or 1993 income tax liabilities, which were the subject of the continuing wage levy.

[4] Petitioner administratively protested the levy of his severance pay with the Taxpayer Advocate's Office. On or about Mar. 7, 2001, petitioner filed Form 911, Application for Taxpayer Assistance Order to Relieve Hardship, wherein he requested that respondent's levy be released and that the $10,068 be returned. On Mar. 29, 2001, the Taxpayer Advocate's Office denied petitioner's request for relief on the ground that petitioner had
(continued...)

<u>Petitioner's 1996-99 Tax Liabilities</u>

Petitioner failed to file timely Federal income tax returns for 1996, 1997, 1998, and 1999. These returns have since been filed. On December 1, 2000, respondent made assessments against petitioner for taxable years 1996, 1997, and 1999, apparently on the basis of amounts shown as tax on petitioner's late-filed returns. On December 8, 2000, respondent sent petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under I.R.C. § 6320, relating to petitioner's 1996, 1997, and 1999 income tax liabilities. On December 12, 2000, respondent sent petitioner a Final Notice, Notice of Intent to Levy, and Notice of Your Right to a Hearing, relating to petitioner's 1996, 1997, and 1999 income tax liabilities. On or about December 29, 2000, in response to these notices, petitioner filed a timely Form 12153, Request for a Collection Due Process Hearing, challenging the legality of the continuing wage levy and raising issues relating to financial hardship.

<u>Notice of Determination</u>

On November 27, 2001, after a hearing, respondent's Appeals Office issued petitioner a notice of determination sustaining the notice of Federal tax lien filing for petitioner's 1996, 1997, and 1999 income tax liabilities but determining that petitioner's

---

[4](...continued)
failed to establish that the levy had caused a hardship.

1996, 1997, and 1999 income tax liabilities were not currently collectible through a levy.[5] The Appeals Office also determined that petitioner's challenge to the continuing wage levy was "not relevant to the collection of the tax shown on the due process hearing notice to the taxpayer [i.e., petitioner's 1996, 1997, and 1999 income tax liabilities] and may not be considered in this due process hearing."

## Discussion

The primary issue is whether the Appeals Office erred in failing to consider petitioner's challenge to the levy of his severance pay that was made in or about December 2000, pursuant to a continuing wage levy that was served on petitioner's employer before the effective date of section 6330.[6]

---

[5] The notice of determination also concluded that petitioner's 1998 income tax liability was not currently collectible through a levy.

[6] In the notice of determination, the Appeals officer determined that petitioner's 1996, 1997, and 1999 income tax liabilities were not currently collectible and that no levy action will take place to collect these income tax liabilities so long as petitioner's financial condition makes it impossible for him to pay these taxes voluntarily. On the basis of this determination, the parties agree that there is no collection issue regarding respondent's proposed levy of petitioner's 1996, 1997, and 1999 income tax liabilities. The parties also agree that there is no collection issue regarding petitioner's 1998 income tax liability.

In the Appeals Office hearing, petitioner contended that the filing of the notice of Federal tax lien for his 1996, 1997, and 1999 income tax liabilities caused him hardship by impairing his credit. Petitioner raised no issues in his petition or on brief

(continued...)

Statutory and Regulatory Framework

Under section 6331(a), if any person liable to pay any tax neglects or refuses to pay the tax within 10 days after notice and demand, the Commissioner is authorized to collect the tax by levy upon all property and rights to property belonging to such person or on which there is a lien for payment of the tax. Section 6331(d) provides that at least 30 days before a levy of a taxpayer's property, the Commissioner must provide the taxpayer with notice of intent to levy.

Section 6330 was added to the Code by the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3401, 112 Stat. 746, to provide taxpayers with the right to an Appeals Office hearing to challenge the propriety of a proposed levy. See Parker v. Commissioner, 117 T.C. 63, 65 (2001). If dissatisfied with the Appeals Office's determination, the taxpayer can appeal it to the Tax Court or a Federal district court, as appropriate. Sec. 6330(d).

Section 6330 is effective for collection actions that are initiated on or after January 19, 1999; i.e., 180 days after its

---

[6](...continued)
relating to this contention. We deem petitioner to have conceded this issue. See, e.g., Rule 331(b); Nicklaus v. Commissioner, 117 T.C. 117, 120 n.4 (2001). Petitioner raises no appropriate spousal defenses, challenges to the appropriateness of the notice of Federal tax lien filing, or offers of collection alternatives. Secs. 6320(c), 6330(c)(2)(A). We likewise deem petitioner to have conceded these matters.

July 22, 1998, enactment. RRA 1998 sec. 3401(d), 112 Stat. 750.
Thus, if a collection action is initiated before January 19,
1999, section 6330 is inapplicable and this Court has no
jurisdiction to review the propriety of the collection action.
See Parker v. Commissioner, supra.

The applicable regulation indicates that if a continuing
wage levy is served on the taxpayer's employer before the
effective date of section 6330, any amounts collected pursuant to
such a levy, including amounts collected after the effective date
of that section, are not subject to the requirements of section
6330. Section 301.6330-1(a)(4), Example (1), Proced. & Admin.
Regs., provides:

> Prior to January 19, 1999, the IRS issues a
> continuous levy on a taxpayer's wages and a levy on
> that taxpayer's fixed right to future payments. The
> IRS is not required to release either levy on or after
> January 19, 1999, until the requirements of section
> 6343(a)(1) are met. The taxpayer is not entitled to a
> CDP [Collection Due Process] Notice or a CDP hearing
> under section 6330 with respect to either levy because
> both levy actions were initiated prior to January 19,
> 1999.[7]

---

[7] The final regulations were issued on Jan. 17, 2002, and
are effective for any levy that occurs on or after Jan. 19, 1999.
Sec. 301.6330-1(j), Proced. & Admin. Regs. The parties rely on
the temporary regulations, which are effective with respect to
any levy occurring on or after Jan. 19, 1999, and before Jan. 22,
2002. Sec. 301.6330-1T(j), Temporary Proced. & Admin. Regs., 64
Fed. Reg. 3413 (Jan. 22, 1999). The temporary regulations
contain the same example provided in the final regulations that
is quoted in the text above.

Petitioner's Contentions

Petitioner does not dispute the validity of the above-quoted regulation.  Petitioner suggests, however, that the severance pay in issue constituted neither "wages" nor a "fixed right to future payments" within the meaning of the regulation.  Rather, petitioner contends, the severance pay "should be considered a separate asset, like a bank account, and subject to a separate levy and thus a separate Collection Due Process Hearing."[8] Accordingly, petitioner concludes, this Court should exercise jurisdiction and hold that he is entitled to an Appeals Office hearing on the merits of his challenge to the levy on his severance pay.[9]

---

[8] Petitioner's argument seems to be premised on sec. 301.6330-1(a)(4), Example (2), Proced. & Admin. Regs., which indicates that a non-fixed, separate asset, like a bank account, is not covered by a continuous levy on a taxpayer's wages or a levy on the taxpayer's fixed right to future payments.  For the reasons discussed in this Opinion, we conclude that petitioner's severance pay is covered by the continuing wage levy.

[9] Generally, this Court's jurisdiction under secs. 6320 and 6330 is predicated upon a written notice of determination and a timely filed petition.  See Lunsford v. Commissioner, 117 T.C. 159, 164 (2001); Offiler v. Commissioner, 114 T.C. 492, 498 (2000).  Respondent issued petitioner no notice of determination for his 1988, 1989, 1990, 1991, 1992, 1993, and 1994 income tax liabilities.  Petitioner contends that the levy on his severance pay was a separate collection action from the continuing wage levy that applied to his 1988-94 income tax liabilities and that respondent's written notice of determination with respect to his 1996, 1997, and 1999 income tax liabilities, wherein respondent refused to consider the merits of his challenge to the levy on his severance pay, provides an adequate jurisdictional predicate for this Court.  Respondent disagrees.  It is unnecessary for us
(continued...)

As explained below, we conclude that petitioner's severance pay constituted "wages" within the meaning of the above-quoted regulation.  Accordingly, because the continuing levy on petitioner's wages predated the effective date of section 6330, we lack jurisdiction to review respondent's collection action with respect to the severance pay.

## Whether Severance Pay Is Subject to a Continuing Wage Levy

Generally, a levy extends only to property possessed and obligations existing at the time levy is made.[10]  Sec. 6331(b). As an exception to this general rule, section 6331(e) provides for a continuing levy on "salary or wages".[11]  The continuing levy attaches to salary or wages earned but not yet paid at the time of levy, advances on salary or wages made after the date of levy, and salary or wages earned and becoming payable after the

---

[9](...continued)
to resolve this issue; as explained in the text above, we conclude that we lack subject-matter jurisdiction to review the levy of petitioner's severance pay because this collection action was initiated prior to the effective date of secs. 6320 and 6330.

[10] Whenever any property or right to property upon which levy has been made is insufficient to satisfy the claim for which levy is made, the Commissioner may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property subject to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.  Sec. 6331(c).

[11] Sec. 6331(h) also provides for a continuing levy that attaches up to 15 percent of any "specified payment" due to the taxpayer.  The term "specified payment" includes certain Federal payments, certain exempt amounts under sec. 6334, and certain annuity or pension payments.  Sec. 6331(h)(2).

date of levy, until the levy is released pursuant to section 6343.  Sec. 301.6331-1(b)(1), Proced. & Admin. Regs.[12]

Section 6331(e) does not specify the types of remuneration that are covered by the term "salary or wages".  The applicable regulations provide, however, that the term "salary or wages" includes "compensation for services paid in the form of fees, commissions, bonuses, and similar items."  Sec. 301.6331-1(b)(1), Proced. & Admin. Regs.  The regulations provide no further explanation or illustration of these "similar items" of compensation and do not explicitly address whether the term "salary or wages" includes severance pay.  Thus, the language of section 6331(e) and the regulations interpreting that Code section are ambiguous as to whether the term "salary or wages" includes severance pay.[13]

---

[12] Sec. 6334(a)(9) exempts from levy certain amounts payable to or received by an individual as salary or wages for personal services.

[13] The legislative history provides little illumination as to whether severance pay should be considered "salary or wages" for this purpose.  Before 1976, a levy extended only to obligations that existed at the time of levy.  S. Rept. 94-938, at 388 (1976), 1976-3 C.B. (Vol. 3) 49, 426.  Consequently, the Commissioner was required to make successive levies in cases involving salaries and wages.  S. Conf. Rept. 94-1236, at 489-490 (1976), 1976-3 C.B. (Vol. 3) 807, 893-894; see also United States v. Long Island Drug Co., 115 F.2d 983 (2d Cir. 1940).  In 1976, sec. 6331(e) was added to the Code by the Tax Reform Act of 1976, Pub. L. 94-455, sec. 1209, 90 Stat. 1709, to provide that "a levy on salary or wages of a taxpayer is to be continuous from the date the levy is first made until the tax liability with respect to which it is made is satisfied or becomes unenforceable because
(continued...)

For the reasons described below, we believe that section 6331(e) is properly construed to include petitioner's severance pay within the meaning of "salary or wages".

First, severance pay is itself a form of compensation. It is paid by the taxpayer's employer as compensation for termination of the employer-employee relationship. In re W.T. Grant Co., 620 F.2d 319, 321 (2d Cir. 1980); Straus-Duparquet, Inc. v. Local Union No. 3, IBEW, 386 F.2d 649, 651 (2d Cir. 1967). In fact, on occasion this Court has characterized severance pay as a replacement or substitute for salary or wages. See, e.g., Collins v. Commissioner, T.C. Memo. 2002-115; Gross v. Commissioner, T.C. Memo. 2000-342.

Second, severance pay is computed generally by reference to the employee's base salary and the employee's length of service or tenure. See Webster's Tenth Collegiate Dictionary 1073 (1997) (defining severance pay as "an allowance usually based on length of service that is payable to an employee on termination of

---

[13](...continued)
of the lapse of time." S. Rept. 94-938, supra at 389, 1976-3 C.B. (Vol. 3) at 427; see H. Rept. 94-658, at 306 (1975), 1976-3 C.B. (Vol. 2) 695, 998. "The underlying purpose of the provision [section 6331(e)] is to provide a means of levying upon remuneration payable to a taxpayer on a recurring basis for personal services performed for the payor." United States v. Jefferson-Pilot Life Ins. Co., 49 F.3d 1020, 1022 (4th Cir. 1995).

employment").[14]   For example, in <u>Kroposki v. Commissioner</u>, T.C.
Memo. 1997-563, we held that certain payments constituted
severance pay because they were determined under a schedule
generally applicable to laid-off employees, based on years of
service and base salary.  Likewise, in <u>Webb v. Commissioner</u>, T.C.
Memo. 1996-50, we held that an amount a terminated employee
received was severance pay because it was made on the basis of
tenure.  See also <u>Broedel v. Commissioner</u>, T.C. Memo. 2001-135.

Third, for Federal income tax and withholding purposes,
severance pay is treated in the same manner as salary and wages.
Under section 61(a), which defines gross income, compensation for
services includes salaries, wages, as well as termination or
severance pay.  Sec. 1.61-2(a)(1), Income Tax Regs.  Under the
employment tax provisions, employers are required to withhold
Federal income tax from severance payments in the same manner as
salary or wages:  "Any payments made by an employer to an
employee on account of dismissal, that is, involuntary separation

---

[14] The Court of Appeals for the Second Circuit has defined
"severance pay" as:

"a form of compensation for the termination of the
employment relation, for reasons other than the
displaced employees' misconduct, primarily to alleviate
the consequent need for economic readjustment but also
to recompense him for certain losses attributable to
the dismissal."  [<u>Straus-Duparquet, Inc. v. Local Union
No. 3, IBEW</u>, 386 F.2d 649, 651 (2d Cir. 1967) (quoting
<u>Adams v. Jersey Cent. Power & Light Co.</u>, 120 A.2d 737,
740 (N.J. 1956)).]

from the service of the employer, constitute wages regardless of whether the employer is legally bound by contract, statute, or otherwise to make such payments." Sec. 31.3401(a)-1(b)(4), Employment Tax Regs.; see Driscoll v. Exxon Corp., 366 F. Supp. 992 (S.D.N.Y. 1973). But see United States v. Jefferson-Pilot Life Ins. Co., 49 F.3d 1020 (4th Cir. 1995) (rejecting an argument that Congress intended the term "salary or wages" in section 6331(e) to have the same meaning as the term "wages" in the employment tax provisions). In addition, for purposes of the Federal Insurance Contributions Act (FICA) tax under section 3121, the term "wages" has been construed to include severance pay. See, e.g., McCorkill v. United States, 32 F. Supp. 2d. 46 (D. Conn. 1999); see also Rev. Rul. 71-408, 1971-2 C.B. 340 (treating dismissal payments as "wages" for FICA, Federal Unemployment Tax Act, and Federal income tax withholding purposes).

Fourth, the term "salary or wages" in section 6331(e) has been construed broadly. For example, in United States v. Jefferson-Pilot Life Ins. Co., supra, the U.S. Court of Appeals for the Fourth Circuit concluded that the term "salary or wages" in section 6331(e) includes commissions paid to independent contractors. In doing so, the Court of Appeals went beyond the employer-employee relationship that we normally associate with salary and wages. We believe that a similarly broad construction

applies in the case of severance pay, which is paid by an employer to an employee as a form of compensation for termination and, in effect, as a substitute for wages.

We recognize that the right to severance pay accrues, if at all, upon the occurrence of the one-time event of an individual's termination from employment. Consequently, it is arguable whether severance pay, if paid in a lump sum, raises the same types of administrative problems as are associated with the types of recurring payments (e.g., salary, wages, and commissions) that the Court of Appeals for the Fourth Circuit identified in United States v. Jefferson-Pilot Life Ins. Co., supra at 1022. Nonetheless, although an employee's rights to severance pay come into being only upon termination, and although some employees may receive a lump-sum severance payment, see Kroposki v. Commissioner, supra, in some cases severance is paid over a period of time, see, e.g., Gross v. Commissioner, supra (severance payments were made over a period of 18 months in amounts equal to the taxpayer's salary before he was terminated).[15] In these cases, taxes are withheld in the same manner as salary and wages. See, e.g., id. Because severance pay is paid by an employer to an employee and is often paid as a

---

[15] We point out that bonuses, which typically are paid as lump sums, are treated as salary or wages for purposes of continuing levies under sec. 6331(e). Sec. 301.6331-1(b)(1), Proced. & Admin. Regs.

substitute for, and in a similar manner to, salary or wages, we believe that including severance amounts in a continuing salary or wage levy is warranted.

Petitioner argues that his severance pay is not covered by section 6331(e) because he was required to affirmatively waive any claim for discrimination to receive his severance pay. Petitioner contends that this affirmative act distinguishes his severance pay from the "salary or wages" that are covered by section 6331(e). We are unpersuaded by petitioner's argument. Receipt of any remuneration from an employer, whether it be in the form of severance pay or other salary or wages, presumably requires some affirmative act on the employee's part, usually in the form of work up until the time of termination. In any event, we are unpersuaded that petitioner's waiver of discrimination claims was anything more than a general release. There is no evidence showing what portion, if any, of the severance package was paid on account of the waiver.[16]

Conclusion

We hold that petitioner's severance pay constituted "salary or wages" within the meaning of section 6331(e) and was properly levied upon pursuant to the continuing wage levy that was served on his employer in October 1997, before the effective date of

---

[16] Petitioner makes no allegation that his severance package was in the nature of a settlement agreement for personal physical injuries. See sec. 104(a)(2).

section 6330.  Inasmuch as the collection action with respect to petitioner's severance pay was initiated before the effective date of section 6330, see sec. 301.6330-1(a)(4), <u>Example</u> (<u>1</u>), Proced. & Admin. Regs., this Court lacks jurisdiction to review respondent's levy upon petitioner's severance pay.

<u>An order and decision will be entered</u>.